UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DENNIS CHRISTIAN, ) | |
| ) | |
| Plaintiff, ) | Case No. 3:08-1025 |
| ) | Judge Trauger |
| v. ) | |
| ) | |
| DAVIDSON TRANSIT ORGANIZATION, ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM

Pending before the court is a Motion to Dismiss Counts 1, 3, 5, 7, 9, and 11 of the Plaintiff's Complaint, filed by the remaining defendant in this case, Davidson Transit Organization ("DTO"). (Docket No. 11.) DTO's Motion will be granted in part and denied in part.

# FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Dennis Christian is a 53-year-old African-American male, who, in March 2000, was hired by the defendant DTO to drive buses for the Metropolitan Transit Authority ("MTA"), which is a publicly chartered metropolitan transit service provider located in Nashville, Tennessee.[1] DTO is a private, nonprofit corporation, also located in Nashville, and is responsible for the employment of all personnel who provide public transit services in Davidson County, Tennessee through the MTA. At all relevant times, the plaintiff was an "at will" employee and a member in good standing of Local Union 1235.

---

[1] Unless otherwise noted, the facts are drawn from the Complaint (Docket No. 1).

1

On October 4, 2005, while on the job, the plaintiff was involved in a bus accident, and he sustained an injury, the effects of which he continued to feel after the accident. On or about October 7, 2005, DTO sent the plaintiff a letter alleging (1) that the plaintiff had submitted a false report to DTO/MTA regarding the October 4, 2005 accident, and (2) that the plaintiff was not wearing his seat belt at the time of the October 4, 2005 accident. Citing these grounds, DTO terminated the plaintiff's employment on or about November 1, 2005.

After his termination, the plaintiff contacted his union, complaining that he had been wrongfully terminated and treated unfairly. On or about November 22, 2005, a union representative contacted DTO and stated that the union thought that the plaintiff had been wrongfully terminated. Despite this, the plaintiff was not reinstated at this time. In January 2006, the Tennessee Department of Labor and Workforce Development, which had investigated the plaintiff's termination, determined that the evidence did not support a charge of misconduct against the plaintiff in connection with the plaintiff's accident report.

In early March 2006, the plaintiff learned that a white female DTO bus driver had also had an accident during which she was not wearing a seat belt, but the white female bus driver was not terminated; rather, the official assessment of the accident was "downgrad[ed] ... to a minor accident in order to ensure that the employee was not suspended or terminated." (Docket No. 1 at 5.) The plaintiff contends that this more lenient treatment of the white driver was inconsistent with DTO policy, which states that there are "no exceptions" to the rule that drivers must wear seat belts whenever they operate MTA buses.

Citing the experience of the white female bus driver, on or about March 4, 2006, the plaintiff again complained to his union that he had been unfairly terminated. The next day, the

2

plaintiff filed a charge with the EEOC, alleging "gender, sex and racial discrimination." (*Id.*) On March 23, 2006, the plaintiff again complained to his union that he had been discriminated against and unfairly terminated. On or about May 11, 2006, the plaintiff's union grievance related to his November 1, 2005 termination was settled, and the plaintiff was allowed to return to work, without, according to the plaintiff, waiving his rights to pursue his claim for discrimination against DTO.

On or about October 5, 2006, the plaintiff was injured in another accident that occurred while he was driving an MTA bus. This accident caused the plaintiff further injury. On October 16, 2006, the plaintiff complained to his union (1) that he was being harassed and intimidated by supervisory personnel, specifically with threats of disciplinary action, future lack of support, and termination; (2) that he had been suspended without notification; and (3) that his rights under the Tennessee Worker's Compensation Act had been violated by the defendant, specifically because the defendant had caused "unnecessary delays" in the plaintiff's treatment for the injuries that he sustained in his accidents.

On October 30, 2006, the plaintiff was again terminated. However, in November 2006, he was allowed to return to work on "light duty," with work restrictions, per his physician's orders.[2] In the winter and summer months, the "light duty" that DTO gave to the plaintiff and

---

[2] In the Complaint, the allegations regarding the plaintiff's second termination are confusing. First, the plaintiff states that "subsequent to the filing of these three [October 16, 2006] grievances [with the union], plaintiff *was terminated* from work on or about October 30, *2008*." (emphasis added). This must be a typographical error because the Complaint was filed on October 21, 2008, nine days before the plaintiff alleges that he "was" fired. Based on the manner in which the facts and allegations are presented in the Complaint, the only reasonable interpretation is that the plaintiff was terminated on October 30, 2006, shortly after his second accident, his suspension, and his grievances to the union. The plaintiff does not, however, explain how or why he was returned to work in November 2006. Also, as indicated below, the

other similarly-situated minority employees involved completing rider counts by monitoring arrivals and departures of passengers at the main terminal. DTO insisted that these employees stand to complete the counts and that the counts be performed in this fashion no matter the weather.

Additionally, neither the plaintiff nor similarly-situated minority employees were allowed to bring their cars to the counts so that they could perform the counts from their cars or use their cars to seek out meals. Despite injury, the plaintiff and other similarly-situated minority employees were forced to work in inclement weather, without relief, access to food, breaks, or restrooms, all of which aggravated the plaintiff's existing physical ailments. On the other hand, "light duty" workers allegedly favored by management, "who were predominantly white and/or male," were given "light duty" assignments that accommodated their injuries, allowed them to work inside, take breaks, eat meals, use their personal vehicles, and have access to restrooms.[3] (Docket No. 1 at 8.) This preferential treatment occurred despite DTO's representations that all workers assigned to passenger counts were treated equally.

On October 21, 2008, the plaintiff filed his Complaint in this action, which asserted twelve claims, that is, six essentially identical claims against both DTO and MTA. On the joint motion of the plaintiff and MTA, MTA was dismissed from this case. (Docket No. 27.)

---

plaintiff does not state when, or if, he was permanently terminated by DTO. The defendant raised these issues in its reply brief, and the plaintiff has not filed any clarifying materials. The plaintiff also did not resolve any of this confusion in his response to DTO's Motion to Dismiss, as the plaintiff largely copied his Complaint allegations into the "General Factual Allegations" section of the response brief. (See Docket No. 30 at 1-7.)

[3] As this portion of the Complaint alleges that the plaintiff, a male, was treated less favorably than other men, the court can only assume that the plaintiff has, somewhat carelessly, "cut and paste" allegations from another, similar complaint with a female plaintiff.

4

**ANALYSIS**

The plaintiff claims that the defendant DTO violated the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Civil Rights Act of 1964, 42 U.S.C. § 2000e, engaged in common law retaliatory discharge, recklessly and/or intentionally inflicted emotional distress on the plaintiff, and violated the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. The remaining defendant in this case, DTO, has moved to dismiss the plaintiff's claims against it on the ground that the plaintiff has allegedly failed to state a claim upon which relief can be granted.

**I.     Motion to Dismiss – Failure to State a Claim**

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer*, 416 U.S. at 236. Rather, challenges to the merits of a plaintiff's claim should be "dealt with through summary judgment under Rule 56." *Swierkiewicz*, 534 U.S. at 514.

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964-65 (2007), the

5

Supreme Court readdressed the pleading requirements under the federal rules. The Court stressed that, although a complaint need not plead "detailed factual allegations," those allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 1964-65. "The factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly*, 127 S.Ct. at 1965). Further, the Court observed that Federal Rule of Civil Procedure 8(a)(2) does require a "showing" that the plaintiff is entitled to relief and that this substantive threshold is not achieved by "blanket assertion[s]." *Twombly*, 127 S.Ct. at 1965 n.3.

Although Federal Rule of Civil Procedure 8 establishes a "liberal system of notice pleading," *see E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1964-65 (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)). Accordingly, to survive a motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 1965; *see also Swierkiewicz,* 534 U.S. at 508 n.1; *Neitzke v. Williams,* 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer,* 416 U.S. at 236 (a well-pleaded complaint may proceed, even if it appears "that a recovery is very remote and unlikely").

6

## II. Claims Against DTO

The plaintiff has asserted six causes of action against DTO. As an initial matter, DTO, without citation, argues that the plaintiff's Complaint should be summarily dismissed because the plaintiff "fails to incorporate any of his 'General Factual Allegations' within any of the counts in his Complaint." (Docket No. 12 at 5-6.) While the plaintiff did not explicitly incorporate his factual allegations into each claim, common sense determines which factual allegations relate to which claims. That said, an analysis of the substance of the plaintiff's Complaint and of the parties' briefing clearly shows that all but one of these claims should be dismissed. The court will address the plaintiff's claims in turn.

### A. Civil Rights Act of 1991 (Section 1981) Claim

The plaintiff's Section 1981 claim is without merit. As this court has repeatedly concluded over the past year, DTO is a state actor for purposes of 42 U.S.C. § 1983. *See e.g. Thompson v. DTO*, 563 F. Supp. 2d 820, 829 (M.D. Tenn. 2008).[4] As DTO is a state actor, claims against DTO alleging racial discrimination must be brought under Section 1983, not Section 1981. *See Jett v. Dallas Independent School District*, 491 U.S. 701, 735 (1989) (finding that Section 1983 "provides the exclusive federal damages remedy for the violation of the rights guaranteed by Section 1981 when the claim is pressed against a state actor.") Therefore, the

---

[4]Two days after the plaintiff filed his Complaint in this case, this court issued opinions in four similar cases involving DTO employees who also alleged that DTO had violated their rights, *inter alia*, under Section 1981. *See generally Smith v. DTO*, 2008 WL 4722652 (M.D. Tenn. Oct. 23, 2008); *Johnson v. DTO*, 2008 WL 4722640 (M.D. Tenn. Oct. 23, 2008); *Allen v. DTO*, 2008 WL 4695042 (M.D. Tenn. Oct. 23, 2008); *Perkins v. DTO*, 2008 WL 4695032 (M.D. Tenn. Oct. 23, 2008). In each of those cases, the court likewise held that DTO was a state actor, and, therefore, the plaintiff had not asserted a viable Section 1981 claim.

7

plaintiff's Section 1981 claim will be dismissed.[5]

### B.     Retaliatory Discharge

The plaintiff asserts a claim of common law retaliatory discharge against DTO. (Docket No. 1 at 12.) The plaintiff has alleged that he was terminated on two occasions, once in November 2005 and again in October 2006. (Docket No. 1 at 4, 7.) Again, there is no indication from the Complaint that the plaintiff was permanently terminated from DTO; rather, the allegation appears to be that the plaintiff was wrongfully terminated on one or both of these two occasions, notwithstanding the fact that he was then subsequently rehired.

The plaintiff's allegations regarding the allegedly retaliatory nature of his discharges are simply "formulaic recitations" of the elements of the cause of action; that is, the plaintiff claims that he was terminated by DTO for his "attempts to exercise statutory and constitutional rights as described herein [and] plaintiff's attempt to exercise basic protected rights and/or attempts to comply with public policy constituted a substantial factor in the employer's decision to discharge him."[6] (Docket No. 1 at 12.) The factual allegations of the Complaint, however, provide no support for these statements. Plainly, under *Twombly*, simply alleging the elements of the cause of action and making conclusory statements in the Complaint are insufficient for a claim to

---

[5]It is therefore not necessary to consider DTO's alternative argument that the plaintiff's Section 1981 claim fails because the plaintiff did not sufficiently plead that he was discriminated against on the basis of race. (Docket No. 12 at 7-8.)

[6]To establish this cause of action, the plaintiff would have to show (1) that an "at will" employment relationship existed; (2) that the plaintiff was discharged; (3) that the reason for the discharge was that the plaintiff attempted to exercise a statutory or constitutional right or for a reason inconsistent with clearly established public policy; and (4) that a substantial factor in DTO's decision to discharge the plaintiff was the plaintiff's exercise of this protected right or his compliance with clear public policy. *See Gossett v. Tractor Supply Co., Inc.*, 2009 WL 528924, *9 (Tenn. Ct. App. March 2, 2009).

8

survive a Rule 12(b)(6) motion to dismiss.[7]

Further, the plaintiff's retaliatory discharge claim is time barred. The plaintiff has alleged that he was terminated on two occasions, and the only reasonable way to read the Complaint is to conclude that the first termination occurred on November 1, 2005 and that the second termination occurred on October 30, 2006. A claim for common law retaliatory discharge must be filed within one year from the date of the unlawful practice. *Conley v. Yellow Fright Sys., Inc.*, 521 F. Supp. 2d 713, 719 (E.D. Tenn. 2007). Here, the Complaint was not filed until October 21, 2008, well outside of the one-year limitations period.[8] For all the reasons discussed above, the plaintiff's retaliatory discharge claim will be dismissed.

### C. Reckless and/or Intentional Infliction of Emotional Distress

The plaintiff alleges, in cursory fashion, that DTO recklessly and/or intentionally inflicted emotional distress on him. (Docket No. 1 at 13-14.) To establish these claims, the

---

[7]In the Complaint, the only arguable factual support for these formulaic and conclusory statements is that, two weeks before his second termination, the plaintiff alleges that he filed grievances with his union. (Docket No. 1 at 6.) This rough temporal connection between his filing of grievances and his termination is, by itself, insufficient to raise the plaintiff's right to relief on this claim above the speculative level, as required by *Twombly*, particularly in the light of the other potential bases for the plaintiff's termination indicated in the Complaint. Further, to the extent that the plaintiff alleges that his union activities were a substantial factor in his termination, the defendant argues that this claim would be pre-empted by the National Labor Relations Act. (Docket No. 12 at 10 citing *San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236, 244-45 (1959)). As the retaliatory discharge claim is clearly not viable under *Twombly*, it is not necessary to engage in the *Garmon* analysis.

[8] Tennessee courts have held that "the limitations period commences when the employee receives unequivocal notice that the employer has made a definite and final decision to terminate the employee." *See Anderson v. A&F Elec. Co., Inc.*, 2006 WL 2105885, *5 (Tenn. Ct. App. July 28, 2006). Here, while the plaintiff was eventually rehired following both of his terminations, there is no indication that, at the time he was terminated, the decision was not "definite and final."

9

plaintiff would have to show (1) that the conduct complained of was intentional or reckless; (2) that the conduct was so outrageous that it is not tolerated by a civilized society; and (3) that the conduct resulted in a serious mental injury. *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W. 3d 22, 41 (Tenn. 2005).

The plaintiff's emotional distress claims against DTO, again, simply provide a formulaic recitation that DTO's conduct was "reckless" (or "intentional"), "outrageous," and caused the plaintiff "severe mental injury." (Docket No. 1 at 13-14.) The Complaint does not support these statements with factual allegations. For instance, there is no factual support provided for the allegation that DTO or its representatives engaged in conduct that is "outrageous." *Id.* at 39 (noting that "outrageous" conduct is conduct that is "beyond all bounds of decency," "atrocious" and "utterly intolerable in a civilized community"). Also, there is no factual support provided for the allegation that the plaintiff suffered a "severe mental injury." As the plaintiff's reckless and intentional infliction of emotional distress claims are simply formulaic recitations of the elements of the causes of action, provided without factual support, these claims will be dismissed.[9]

### D. Americans with Disabilities Act (ADA) Claim

The plaintiff has also alleged that DTO violated the Americans with Disabilities Act

---

[9] Therefore, it is not necessary to consider DTO's alternative argument that the plaintiff's reckless and intentional infliction of emotional distress claims are barred due to the exclusivity provisions in Tennessee's worker compensation law. (Docket No. 12 at 11-12.) DTO did, without legal support, argue that the court lacked subject matter jurisdiction over the plaintiff's emotional distress claims because of the exclusivity provisions. (Docket No. 31 at 6-7.) The Sixth Circuit has found that defenses based on the exclusivity provisions can be waived, indicating that these defenses do not invoke the court's subject matter jurisdiction. *Pollard v. E.I. DuPont De Nemours, Inc.*, 412 F.3d 657, 666 (6th Cir. 2005).

10

(ADA). The ADA prohibits employers from discriminating against employees with a disability who would otherwise be able to perform the essential duties of the job with or without reasonable accommodation. 42 U.S.C.§ 12111-12112(a). Therefore, to qualify for protection under the ADA, the plaintiff must have a disability. *Verhoff v. Time Warner Cable, Inc.*, 299 Fed. Appx. 488, 491 (6th Cir. 2008). A disability is a physical impairment that "substantially limits" one or more major life activities. *Id.* at 491-92. In short, to qualify as disabled under the ADA, one must do more than allege a physical or mental impairment. One must show that the impairment has a "substantially limit[ing]" effect on a major life activity in order for that impairment to rise to the level of a disability. *Id.*

In his Complaint, the plaintiff vaguely alleges that he sustained some injury in each of his two accidents, but beyond simply stating that these injuries "qualified him as an individual with a disability within the meaning of the" ADA, the plaintiff does not allege anything more than that he suffered "an injury" at work. (Docket No. 1 at 5-6.) As the defendant points out in challenging the plaintiff's claim of disability, the plaintiff "makes no effort to describe or substantiate the existence and extent" of the alleged disability. (Docket No. 12 at 13.)[10]

Indeed, the factual allegations show that the plaintiff's injury produced limited impairment. After the first accident, the plaintiff was able to return to his regular bus driving duties, and, after the second accident, the plaintiff was still able to perform his job, that is, he was still able to perform the major life activity of "working," just in a different capacity. *See*

---

[10]Relying on *pre-Twombly* case law, the plaintiff argues that, in his Complaint, he is not required to identify his impairment or the major life activity that has been substantially limited. (Docket No. 30 at 13 *citing EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 854 (6th Cir. 2001)). Even before *Twombly*, however, the Sixth Circuit directed plaintiffs, at the pleading stage, to identify the "particular impairment" alleged. *J.H. Routh Packing Co.*, 246 F.3d at 854.

11

*Swanson v. Univ. of Cincinnati*, 268 F.3d 307, 317 (6th Cir. 2001) ("the inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.")

In sum, even accepting the plaintiff's allegations as true, the plaintiff has not sufficiently alleged that he was "disabled," that is, that he had an impairment that "substantially limited" one or more major life activities, and, therefore, the plaintiff's ADA claim will be dismissed.[11]

### E. Civil Rights Act of 1964 (Title VII) Claim

The plaintiff alleges that DTO perpetuated a racially hostile work environment and discriminated against him on the basis of his race in violation of Title VII. (Docket No. 1 at 10-11.) While the plaintiff does not offer any factual allegations to support his claim of a racially hostile work environment, the plaintiff has sufficiently stated a claim for racial discrimination under Title VII.[12]

Title VII provides that it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment,

---

[11] The court recognizes the "ADA Amendments Act of 2008," in which Congress, effective January 1, 2009, explicitly overruled major Supreme Court decisions construing the ADA and established that "the definition of disability in this Act shall be construed in favor of broad coverage of individuals under this Act, to the maximum extent permitted by the terms of this Act." P.L. 110-325 § 4(A). The ADA amendments do not influence the court's analysis because the court is to apply the ADA law that was in place at the time the conduct complained of occurred. *Verhoff*, 299 Fed. Appx. at 492.

[12] To establish a *prima facie* claim of a racially hostile work environment under Title VII, the plaintiff must demonstrate that (1) he was a member of a protected class; (2) he was subject to unwelcome racial harassment; (3) the harassment was based on race; (4) the harassment unreasonably interfered with his work performance by creating an intimidating, hostile, or offensive work environment; and (5) the employer is liable. *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999). Beyond a conclusory allegation, the plaintiff has simply not alleged that he was subject to harassment on the basis of his race.

12

because of such individual's race ... ." 42 U.S.C. § 2000e-2(a). Here, the plaintiff has alleged that he and other minorities were treated less favorably in terms of working conditions performing rider counts than similarly-situated employees not of the plaintiff's race. (Docket No. 1 at 7-8.) The plaintiff supports these allegations by stating that he was forced to work outdoors, without access to a car, without breaks or meals, while other similarly-situated employees not of his race were allowed privileges such as access to a car and the right to work indoors. (*Id.*)

Without admitting the allegations, in its reply brief, DTO appropriately conceded that the plaintiff has stated a claim for racial discrimination under Title VII based on the plaintiff's allegation regarding the rider counts. (Docket No. 31 at 4.) Plainly, with these allegations and their underlying factual support, the plaintiff has established that his Title VII claim should not be dismissed. DTO requests, however, that the court "specifically limit [the Title VII claim] to race discrimination for plaintiff's working condition of performing rider counts." (*Id.*) The problem with DTO's request is that the plaintiff also alleges that, in early 2006, he learned that he had been punished more harshly than a white female bus driver who also was involved in an accident while not wearing her seat belt. In light of the plaintiff's allegation regarding the white female bus driver, the court declines to explicitly demarcate the confines of the plaintiff's Title VII claim as DTO requests.

13

## **CONCLUSION**

For the reasons discussed herein, each of the plaintiff's claims against DTO will be dismissed, with the exception of the plaintiff's Title VII claim.

An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge

14